UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SKYLINE TRAVEL, INC., and                                    09 CV 8007 (LTS) (MHD)
ABY GEORGE
                                Plaintiffs,


        -against-                                        **COMPLAINT**


EMIRATES                                                     JURY TRIAL DEMANDED
                                Defendant.
------------------------------------------------------------------X

      1.      Plaintiffs are Skyline Travel, Inc., doing business at all material times as a New Jersey corporation at 1330 Oak Tree Road, Suite 201, Iselin, New Jersey 08830 and currently doing business as a Texas corporation in Dallas, Texas, and Aby George, owner/operator of plaintiff Skyline Travel, Inc., residing at 904 Waterside Drive, Euless, Texas 76039.

      2.      Defendant is Emirates, doing business at 55 E. 59th Street, Fifth Floor, New York, New York.

      3.      Plaintiff, Skyline Travel, Inc., is in the business of travel services, selling various products, services and packages including air transportation to retail customers.

      4.      Defendant is in the business of air transportation, owning and operating a fleet of jets that provides transportation to and from numerous international locations, including New York City.

      5.      At all material times to this complaint, plaintiff, Skyline Travel, Inc., acted by and through its employees, servants and agents who were acting in the scope and course of employment, agency and servitude, including Aby George, and/or acted by and through its affiliate and/or sibling business, Skyline Travel, Incorporated, a Texas corporation.

6. At all material times to this complaint, defendant acted by and through its employees, servants and agents who were acting in the scope and course of employment, agency and servitude.

7. In or about the year 2003, plaintiff, Skyline Travel, Inc. and defendant began a relationship whereby plaintiff purchased air transportation from defendant for individual passenger seats.

8. Plaintiff travel agency purchased tickets for its customers from defendant in two capacities: first, there were tickets purchased pursuant to a special fare contract, also known as a consolidator contract, that allowed plaintiff to purchase special fare tickets; secondly, plaintiff purchased tickets from defendant as an Airline Reporting Corporation ("ARC") agent, buying the tickets over the global distribution system ("GDS"), the airline reservation system for all travel agents that were registered with ARC

9. Defendant was a new carrier to the New York metropolitan area and plaintiff's sales of defendant's plane tickets greatly helped defendant achieve a leading position in the air transportation industry.

10. Plaintiff was a top producing agency as far as sales of defendant's plane tickets, and in fact was in the top-ten, highest producing agents.

11. From 2003 to 2007, plaintiff earned sales and commissions from tickets for Emirates flights in the following amounts:

From: 4/1/2003 – 3/31/2004; Sales: $ 466,544.30; Commission Earned: $ 29,949.53;

From: 4/1/2004 – 3/31/2005; Sales: $ 5,330,422.85; Commission Earned: $ 457,373.02;

From: 4/1/2005 – 3/31/2006; Sales: $ 2,951,671.07; Commission Earned: $ 273,329.46;

From: 4/1/2006 – 3/31/2007; Sales: $ 2,556,424.97; Commission Earned: $ 180,770.50.

12. Plaintiff's annual average of sales from tickets on Emirates flights, from 4/1/03 through 3/31/07 equals $2,826,265.70. Plaintiff's annual average of commissions from tickets on Emirates flights, from 4/1/03 through 3/31/07 equals $235,355.62.

13. The special fare contract was an annual contract and when it expired on or about March 31, 2007, defendant Emirates did not renew the contract. However, the parties still did business, with plaintiff purchasing tickets as an ARC agent.

14. Suddenly, on or about June 6, 2007, plaintiff was blocked and inhibited by the ARC computer reservation system for defendant's airline tickets, and consequently plaintiff was unable to purchase plane tickets for defendant's flights over the GDS for subsequent re-sale to its customers.

15. On or about June 6, 2007, Skylink Travel, Inc. ("Skylink"), a travel wholesaler, communicated with defendant to have twenty-one plane tickets on defendant's flights cancelled.

16. The tickets had been ordered by plaintiff travel agency from Skylink Travel, Inc. who falsely and inaccurately claimed to be unpaid by plaintiff; however, eighteen of the tickets had been paid for at the time of cancellation and the other three did not have payment due yet.

17. On or abut June 6, 2007, Skylink Travel Inc., by Sanjeev Sarna, wrote to Akbar Hussain of defendant, Emirates, to the effect that plaintiff travel agency had not paid for the tickets of the listed customers and was making excuses, specifically, by stating "The company has failed to pay us for the tickets and are now coming up with excuses".

18. In the June 6, 2007 letter, Sarna requested that certain plane tickets be cancelled.

19. The tickets that Sarna was referring to in his June 6, 2007 letter to Hussain,

3

were for the following listed passengers: Anisha Jasani, Kushbu Jasani, Rahul Patel, Approva Abbi, Rakesh Abbi, Minakshi Abbi, and Ankit Abbi.

20.     The statement by Sarna that tickets had not been paid-for, is and was false, because plaintiffs did in fact pay for the tickets for passengers Apoorva Abbi, Rakesh Abbi, Minakshi Abbi and Ankit Abbi on May 25, 2007 and because the payment for passengers Kushbu Jasani, Anisha Jasani and Rahul Patel was not due.

21.     Furthermore, plaintiff Aby George was never contacted by Skylink Travel, Inc. to be "coming up with excuses", as he was out of the country and had not spoken to anyone from Skylink Travel, Inc.

22.     Plaintiff agency was not "coming up with excuses", as accused by Sarna, but, on the contrary, sent a communication as to payment to Skylink Travel Inc. on or about June 1, 2007.

23.     Therefore, the statement made in the letter to defendant, Emirates, that plaintiffs were "coming up with excuses" was also false.

24.     The June 6, 2007 letter from Sanjeev Sarna, to Akbar Hussain of defendant Emirates, did not specify, describe or explain, in any way, exactly what excuses plaintiffs were "coming up with".

25.     Skylink Travel, Inc. never wrote any communication to plaintiffs specifying, describing or explaining the excuses that plaintiffs were allegedly "coming up with".

26.     Bhupinder Nanda, Emirates' financing and administration manager of the USA, was under the impression that plaintiff, Skyline Travel, Inc., had not made payments to Skylink Travel Inc., around June 2007, from communications from either Akbar Hussain or Maria Fernandez in the sales department of Emirates.

4

27. Sanjeev Sarna also called Akbar Hussain on the telephone and said to Emirates' employee, Hussain, that plaintiffs really did not pay.

28. Skylink's telephone call to Emirates, described in the preceding paragraph, is and was false for the same reason that the June 6, 2007 letter was false.

29. Plaintiffs were harmed by Skylink's June 6, 2007 letter to Emirates in that immediately thereafter, rumors circulated about plaintiffs being bankrupt and going out of business.

29. Skyline Travel, Inc., is registered with ARC as Air Travel Experts, ARC Number 45-569053.

30. Plaintiff learned of the rumors circulating about him and took measures to investigate the rumors and quell them.

31. As a direct result of the letter from Skylink Travel Inc. to Emirates, Emirates cancelled tickets for Emirates flights that plaintiff had purchased for its passengers.

32. As a direct result of the letter from Skylink Travel Inc. to Emirates, Emirates blocked plaintiff from selling tickets for Emirates flights on the Airline Reporting Corporation (ARC) and Global Distribution System (GDS) computerized ticket reservation systems.

33. Emirates has stated that plaintiffs were blocked on ARC and GDS because plaintiffs' letter of credit was withdrawn.

34. However, plaintiffs withdrew their letter of credit much later, in or about March 2008.

35. In fact, plaintiffs were blocked from Emirates sales on June 7, 2007, just one day after the letter from Skylink Travel Inc. to Emirates.

36. As a direct result of being blocked, plaintiffs lost sales and commissions on

5

Emirates flights because plaintiffs could not issue tickets.

37.     Plaintiffs have not sold any tickets on any Emirates flights since June 6, 2007. Therefore, as a direct result of the being blocked from Emirates sales, plaintiffs have sustained damages, including financial losses of hundreds of thousands of dollars in lost commissions.

38.     Plaintiffs were blocked from sales from approximately June 6, 2007 to March 2008, a period of time when they had a letter of credit on file, and are still blocked to this day.

39.     As a direct result of defendant's cancellation of tickets, plaintiff's, Skyline Travel, Inc.'s, customers were left without the air transportation that they had paid for.

40.     In order to obtain replacement transportation for its customers, plaintiff, Skyline Travel, Inc., went onto the open market to purchase replacement tickets, closer in time to the customers' departure dates, replacing the tickets that defendant had cancelled.

## COUNT I: NEGLIGENCE

41.     Plaintiffs incorporate herein by reference paragraphs one through forty of this complaint as if set forth at length.

42.     On or about June 7, 2007, defendant was operating its transportation business in New York City.

43.     On or about June 7, 2007, defendant operated its business so carelessly, recklessly and negligently as to cause the cancellation of certain tickets purchased by plaintiffs and to cause the blockage and inhibition of plaintiffs on ARC and GDS.

44.     The conduct of defendant in doing business as set forth above was so reckless, careless and negligent as to cause plaintiffs damages set forth hereinafter.

45.     The recklessness, carelessness and negligence of defendant consisted of, *inter alia:*

6

   a. failing to determine the truth and accuracy of the statements made to it by Skylink Travel, Inc;

   b. allowing inaccurate information about plaintiffs to be received by it ;

   c. acting upon false and inaccurate information about plaintiffs;

   d. violating the standards set forth by the travel industry and/or federal, state, and local governments and authorities;

   e. mismanagement;

   f. negligence *per se* based upon defendant's violations of 49 USC § 41712 and 14 CFR § 399.80;

   g. *res ipsa loquitor* is affirmatively pleaded

   h. as will be discovered in discovery;

   i. failing to act prudently at all times.

46. As a direct result of defendant's recklessness, carelessness and negligence, defendant has caused, and will or may cause in the future, damages to plaintiffs, Skyline Travel, Inc. and Aby George, and/or Skyline Travel, Inc.'s affiliate or sibling, Skyline Travel, Incorporated, including, but not limited to:

   a. a loss of past revenues, income and profit;

   b. a loss of future revenues, income and profit;

   c. a loss of repeat business;

   d. a loss of goodwill;

   e. a loss of competitive advantage;

   f. a loss of customers;

   g. out-of-pocket losses.

WHEREFORE, plaintiffs, Skyline Travel, Inc. and Aby George demand that judgment be entered in their favor and against defendant, Emirates, and that special and general damages in the amount of Two Million Dollars ($2,000,000.00), attorney fees, costs and interest be awarded.

## COUNT II: ANTI-TRUST

47. Plaintiffs incorporate herein by reference paragraphs one through forty-six of this complaint as if set forth at length.

48. Plaintiffs and defendant operated businesses in a relevant market, which was, generally, passenger air transportation and related services from the United States of America to Asia, and specifically, passenger air transportation and related services from the state of New Jersey and the New York metropolitan area to the Gulf states and the Indian sub-continent.

49. Defendant had and has monopoly power and control in the relevant market.

50. Plaintiffs were actively engaged in the travel business and were viable and significant competitors of defendant from approximately 2003 to approximately June 2007, selling the same products to the same customers in the relevant market, as set forth above.

51. Defendant, Emirates, wrongfully and anti-competitively interacted with a New York travel agency that was a competitor of plaintiffs', Skylink Travel Inc. (hereinafter "Skylink"), by conspiring with Skylink, banding together with Skylink, combining with Skylink, making arrangements with Skylink, having a reciprocal relationship with Skylink, and/or contracting with Skylink, as set forth below.

52. Defendant, Emirates, and Skylink wrongfully pressured and influenced a third-party, the Airline Reservation Corporation, (ARC).

53. The nature of the interaction, conspiracy and joint efforts between defendant and

Skylink was a pattern of conduct aimed at the disabling of plaintiff in the global distribution system for delivering passenger air transportation, owned and operated by ARC, so that plaintiff, Skyline Travel, Inc., would not be able to buy defendant's tickets for resale to Skyline Travel Inc.'s customers. The wrongful interaction, conspiracy and joint efforts consisted of overt acts such as letters, emails, telephone calls and other communications.

54. The interaction, conspiracy and joint efforts were based upon and accomplished when Skylink wrongfully communicated with defendant, by writing a letter containing deceptions, misrepresentations, and falsehoods, to the effect that plaintiffs did not pay for certain fares of its customers for tickets that Skylink had sold to plaintiff agency, when in fact plaintiffs had paid for the fares.

55. Defendant Emirates failed to investigate the contents of the Skylink letter or in the alternative failed to competently investigate the matter to ascertain the truth of the contents.

56. Defendant failed to confirm the truth of the allegations contained in the Skylink letter.

57. Defendant knew or should have known that plaintiffs had paid for the tickets that Skylink stated were unpaid.

58. Skylink's letter to Emirates caused defendant Emirates to communicate with ARC, requesting that ARC block plaintiff from buying Emirates' tickets through the computer reservation system.

59. In fact, plaintiffs were thereafter blocked from the system and to this day has been unable to buy defendant's, Emirates', tickets through ARC.

60. The conduct of defendant, including but not limited to the wrongful pressure exerted by defendant Emirates on ARC, was intended to, and did in fact accomplish the intent to:

    a. have ARC restrict and block sales of defendant's tickets to plaintiff;

    b. have ARC refuse to sell defendant's tickets to plaintiffs;

    c. destroy competition;

    d. eliminate a competitor from competing;

    e. destroy plaintiffs' entire product, product line and business;

    f. injure plaintiff and destroy his business;

    g. ruin a competitor's business;

    h. exclude competitors;

    i. monopolize;

    j. strengthen defendant's position.

61. The conduct of defendant, including but not limited to the wrongful pressure exerted by defendant Emirates on ARC, directly has caused, and, in the future, may cause:

    a. a tendency toward lessening and impairing competition in the relevant market;

    b. an anti-competitive impact;

    c. a monopoly;

    d. a restraint of trade and other economic impacts;

    e. restraint of trade in the market in question by achieving the destruction of plaintiffs' New Jersey operation;

    f. restraint of trade in the market in question by eliminating a competitor;

    g. undue restraint;

    h. a reduced number of competitors;

    i. the elimination of a competitor;

j.  the customer base to be deprived of having another business from which to buy air transportation;

k.  the customer base to be deprived of having a business from which to buy plane tickets at better prices than those offered by defendant;

l.  competitive injuries;

m.  public detriment;

n.  damages to plaintiff's competitive interests;

o.  destruction of plaintiff's New Jersey travel agency;

p.  a loss of past sales, commissions, revenues, income and profit to plaintiffs and/or Skyline Travel, Inc.'s affiliate or sibling, Skyline Travel, Incorporated;

q.  a loss of future sales, commissions, revenues, income and profit to plaintiffs and/or Skyline Travel, Inc.'s affiliate or sibling, Skyline Travel, Incorporated;

r.  a loss of repeat business to plaintiffs and/or Skyline Travel, Inc.'s affiliate or sibling, Skyline Travel, Incorporated;

s.  a loss of goodwill to plaintiffs and/or Skyline Travel, Inc.'s affiliate or sibling, Skyline Travel, Incorporated;

t.  a loss of competitive advantage to plaintiffs and/or Skyline Travel, Inc.'s affiliate or sibling, Skyline Travel, Incorporated;

u.  a loss of customers to plaintiffs and/or Skyline Travel, Inc.'s affiliate or sibling, Skyline Travel, Incorporated;

v.  out-of-pocket losses to plaintiffs and/or Skyline Travel, Inc.'s affiliate or sibling, Skyline Travel, Incorporated.

62.  The effects and consequences of the conspiracy, set forth above, and the damages

to plaintiffs, are a direct result of and have been caused by defendant's conspiracy, joint efforts and reciprocal arrangements with Skylink.

63. The effects and consequence set forth above, including the refusal to sell to plaintiffs, were unreasonable, discriminatory, and done in bad faith.

64. The above conduct of defendant, including refusal to sell, was and is a *per se* illegal boycott of plaintiffs and/or concerted refusal to deal with plaintiffs.

65. Furthermore, defendant had control of an essential facility, ARC, which gave plaintiffs the ability to purchase plane tickets from defendant, for resale.

66. Competitors of defendant, including plaintiff, have an inability, practically or reasonably, to duplicate the essential facility.

67. Defendant denied the use of the essential facility to plaintiffs.

68. It was unreasonable to deny use or access to the essential facility, and in fact, it was feasible for defendant to provide the facility to plaintiffs.

69. Therefore, defendant has illegally denied plaintiffs access to essential facilities.

70. The above overt acts by defendant and Skylink happened within the United States of America, within the Southern District of New York.

71. As a direct result of the above, defendant's acts were a willful acquisition of monopoly power, an illegal restraint of trade, a violation of the antitrust laws of the United Sates of America and the state of New York, including the New York General Business Law, Article 22, and federal antitrust laws, including but not limited to the Sherman Act and the Clayton Act.

WHEREFORE, plaintiffs, Skyline Travel, Inc. and Aby George, demand that judgment be entered in their favor and against defendant, Emirates, and that special, general and

punitive damages in the amount of Ten Million Dollars ($10,000,000.00), attorney fees, costs and interest be awarded.

## COUNT III:  UNFAIR COMPETITION

72. Plaintiffs incorporate herein by reference paragraphs one through seventy-one of this complaint as if set forth at length.

73. Plaintiffs and defendant compete in the same markets in that they both sell the same products to the same customers in the geographic area served by defendant.

74. Defendant's actions to plaintiffs were acts of unfair competition because defendant eliminated a competitor from competing and strengthened its own position; also, the actions were monopolistic or had monopolistic tendencies.

75. Defendant's actions and conduct were unfair and a violation of the common law of unfair competition.

76. As a direct result of defendant's unfair competition, defendant has caused, and will or may cause in the future, damages to plaintiffs, Skyline Travel, Inc. and Aby George, and/or Skyline Travel, Inc.'s affiliate or sibling, Skyline Travel, Incorporated, including, but not limited to:

      a. a loss of past revenues, income and profit;

      b. a loss of future revenues, income and profit;

      c. a loss of repeat business;

      d. a loss of goodwill;

      e. a loss of competitive advantage;

      f. a loss of customers;

      g. out-of-pocket losses.

WHEREFORE, plaintiffs, Skyline Travel, Inc. and Aby George, demand that judgment be entered in their favor and against defendant, Emirates, and that special, general and punitive damages in the amount of Two Million Dollars ($2,000,000.00), attorney fees, costs and interest be awarded.

### COUNT IV: BREACH OF CONTRACT

77. Plaintiffs incorporate herein by reference paragraphs one through seventy-six of this complaint as if set forth at length.

78. The aforesaid conduct of defendant, Emirates, including, but not limited to, canceling tickets that plaintiffs had purchased, was and is a breach of its contract with Skylink Travel, Inc, wherein plaintiffs were third-party beneficiaries, and/or was a breach of the terms and conditions of the plane tickets held by plaintiffs' customers.

79. As a direct result of defendant's, Emirates', breach of duties, defendant has caused, and will or may cause in the future, damages to plaintiffs and/or Skyline Travel, Inc.'s affiliate or sibling, Skyline Travel, Incorporated,, including, but not limited to:

    a. a loss of past revenues, income and profit, including a loss of profits on its sale of air transportation to its customers that had the cancelled tickets;

    b. a loss of future revenues, income and profit;

    c. a loss of repeat business;

    d. a loss of goodwill;

    e. a loss of competitive advantage;

    f. a loss of customers;

g. out-of-pocket losses, including losses to plaintiffs as a result of purchasing replacement air travel, at higher rates, closer in time to the departure dates of its customers;

h. harm to the reputation of plaintiff, Skyline Travel, Inc.;

i. exposure to lawsuits from its customers who had their tickets cancelled by defendant.

WHEREFORE, plaintiffs, Skyline Travel, Inc. and Aby George, demand that judgment be entered in their favor and against defendant, Emirates, and that special damages in the amount of One Hundred Thousand Dollars ($100,000.00) and costs and interest be awarded.

**COUNT V: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

80. Plaintiffs incorporate herein by reference paragraphs one through seventy-nine of this complaint as if set forth at length.

81. The statutes, regulations and/or common law of the State of New York impose an implied duty of good faith and fair dealing in contract.

82. The duty of good faith and fair dealing in contract was fully effective, operational and valid and was imposed upon defendant, at all material times to this complaint, including the years 2003 through 2007.

83. The aforesaid conduct of defendant, including, but not limited to, canceling tickets and blocking and/or inhibiting plaintiffs or its affiliate or sibling, Skyline Travel, Incorporated, from ARC and/or GDS sales was and is a breach of the duty of good faith and fair dealing owed to plaintiffs.

84. As a direct result of defendant's, breach of the duty of good faith and fair dealing, defendant has caused, and will or may cause in the future, damages to plaintiffs and/or Skyline Travel, Inc.'s affiliate or sibling, Skyline Travel, Incorporated, including, but not limited to:

> a. a loss of past revenues, income and profit, including a loss of profits on its sale of air transportation to its customers that had the cancelled tickets;
>
> b. a loss of future revenues, income and profit;
>
> c. a loss of repeat business;
>
> d. a loss of goodwill;
>
> e. a loss of competitive advantage;
>
> f. a loss of customers;
>
> g. out-of-pocket losses, including losses to plaintiff as a result of purchasing replacement air travel, at higher rates, closer in time to the departure dates of its customers;
>
> h. harm to the reputation of Plaintiff, Skyline Travel, Inc.;
>
> i. exposure to lawsuits from its customers who had their tickets cancelled by defendant.

WHEREFORE, plaintiffs, Skyline Travel, Inc. and Aby George, demand that judgment be entered in their favor and against defendant, Emirates, and that special and general damages in the amount of One Hundred Thousand Dollars ($100,000.00) plus costs and interest be awarded.

### COUNT VI: INTENTIONAL, TORTIOUS INTERFERENCE WITH CONTRACT

85. Plaintiffs incorporate herein by reference paragraphs one through eighty-four of this complaint as if set forth at length.

16

86. Plaintiffs, Skyline Travel, Inc. and/or Aby George and/or plaintiff agency's affiliate or subsidiary, Skyline Travel, Incorporated, had a valid contract with the Airline Reporting Corporation (ARC) at the time that defendant had a business relationship with plaintiff.

87. Defendant knew of the plaintiff's contract and registration with ARC.

88. Plaintiffs, Skyline Travel, Inc. and/or Aby George and/or plaintiff agency's affiliate or subsidiary, Skyline Travel, Incorporated, derived revenues, income and profits from its/his contract and registration with ARC.

89. Defendant interfered with plaintiffs' contract and registration with ARC.

90. Defendant's wrongful and interfering conduct included, but is not limited to canceling flight reservations and blocking and/or inhibiting plaintiff from buying or selling defendants' tickets on ARC or GDS.

91. Said conduct of defendant was intentional, purposeful, wrongful, tortious, and an unjustified intentional procurement of a breach of contract.

92. As a direct result of defendant's conduct, there were breaches, interferences, inabilities to sell tickets and partial and/or total failures of performance of contractual duties, to the contracts of plaintiffs with third parties.

93. As a direct result of defendant's intentional interference with contracts of plaintiffs, defendant has caused, and will or may cause in the future, damages to plaintiffs, Skyline Travel, Inc. and/or Aby George and/or plaintiff agency's affiliate or subsidiary, Skyline Travel, Incorporated, including, but not limited to:

    a. a loss of past revenues, income and profit, including a loss of profits on its sale of air transportation to its customers that had the cancelled tickets;

b. a loss of future revenues, income and profit;

c. a loss of repeat business;

d. a loss of goodwill;

e. a loss of competitive advantage;

f. a loss of customers;

g. out-of-pocket losses, including losses to plaintiff as a result of purchasing replacement air travel, at higher rates, closer in time to the departure dates of its customers;

h. harm to the reputation of plaintiff, Skyline Travel, Inc.;

i. exposure to lawsuits from its customers who had their tickets cancelled by defendant.

WHEREFORE, plaintiffs, Skyline Travel, Inc. and Aby George, demand that judgment be entered in their favor and against defendant, Emirates, and that special damages, general damages, and punitive damages in the amount of Two Million Dollars ($2,000,000.00) plus attorney fees, costs and interest be awarded.

Dated:  New York, New York
        November 15, 2009

                                                        /s/
                                                ROBERT G. LEINO, ESQ.
                                                Attorney for Plaintiffs
                                                Skyline Travel, Inc. and
                                                Aby George
                                                15 Park Row, 17F
                                                New York, New York 10038
                                                646-286-5476 cell
                                                646-484-5748 land
                                                646-964-5928 fax
                                                rgleino@leinolaw.com