UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SKYLINE TRAVEL, INC. (NJ),                             09 CV 8007 (LTS) (MHD)
SKYLINE TRAVEL, INC. (TX), and
ABY GEORGE
                                     Plaintiffs,


            -against-                                              **AMENDED COMPLAINT**



EMIRATES
                           Defendant.
------------------------------------------------------------------X


      1.     Plaintiffs are: Skyline Travel, Inc., incorporated in New Jersey, and doing business **at** all material times as a New Jersey corporation at 1330 Oak Tree Road, Suite 201, Iselin, New Jersey 08830; Skyline Travel, Inc., incorporated in Texas, and doing business at all material times as a Texas corporation and currently doing business as a Texas corporation at 1140 Empire Central Drive, Suite 620, Dallas, TX 75247; and Aby George, owner/operator of plaintiffs, Skyline Travel, Inc., residing at 904 Waterside Drive, Euless, Texas 76039.

      2.     Defendant is Emirates, doing business at 55 E. 59th Street, Fifth Floor, New York, New York.

      3.     Plaintiffs, Skyline Travel, Inc., are in the business of travel services, selling various products, services and packages including air transportation to retail customers.

      4.     Defendant is in the business of air transportation, owning and operating a fleet of jets that provides transportation to and from numerous international locations, including New York City.

      5.     At all material times to this complaint, plaintiffs, Skyline Travel, Inc., acted by

and through their employees, servants and agents, including Aby George, who were acting in the scope and course of employment, agency and servitude.

6. At all material times to this complaint, defendant acted by and through its employees, servants and agents who were acting in the scope and course of employment, agency and servitude.

7. In or about the year 2003, plaintiff, Skyline Travel, Inc. (TX), and defendant began a relationship whereby plaintiff purchased air transportation from defendant for individual passenger seats.

8. Plaintiffs, Skyline Travel, Inc., purchased tickets for its customers from defendant in two capacities: first, there were tickets purchased pursuant to a special fare contract, also known as a consolidator contract, that allowed plaintiff, Skyline Travel, Inc. (TX)'s, to purchase special fare tickets; secondly, plaintiffs purchased tickets from defendant as Airline Reporting Corporation ("ARC") agents, buying the tickets over the global distribution system ("GDS"), the airline reservation system for all travel agents that were registered with ARC.

9. Skyline Travel, Inc. (TX), is registered with ARC as Air Travel Experts, ARC Number 45-569053.

10. Skyline Travel, Inc. (NJ) is also registered with ARC.

11. Defendant was a new carrier to the New York metropolitan area and plaintiffs' sales of defendant's plane tickets greatly helped defendant achieve a leading position in the air transportation industry.

12. Plaintiffs, Skyline Travel, Inc., were a top producing agency as far as sales of defendant's plane tickets, and in fact were in the top-ten, highest producing agents.

13. From 2003 to 2007, Skyline Travel, Inc. (TX) earned sales and commissions from tickets for Emirates flights in the following amounts:

From: 4/1/2003 – 3/31/2004; Sales: $ 466,544.30; Commission Earned: $ 29,949.53;

From: 4/1/2004 – 3/31/2005; Sales: $ 5,330,422.85; Commission Earned: $ 457,373.02;

From: 4/1/2005 – 3/31/2006; Sales: $ 2,951,671.07; Commission Earned: $ 273,329.46;

From: 4/1/2006 – 3/31/2007; Sales: $ 2,556,424.97; Commission Earned: $ 180,770.50.

14. Plaintiff's, Skyline Travel, Inc. (TX)'s, annual average of sales from tickets on Emirates flights, from 4/1/03 through 3/31/07 equals $2,826,265.70. Plaintiff's annual average of commissions from tickets on Emirates flights, from 4/1/03 through 3/31/07 equals $235,355.62.

15. Plaintiff, Skyline Travel, Inc. (NJ), sold approximately $250,000.00 in tickets for defendant Emirates and earned significant commissions from the sales, annually, in the years 2003 through 2007.

16. The special fare contract was an annual contract and when it expired on or about March 31, 2007, defendant, Emirates, did not renew the contract. However, the parties still did business, with plaintiffs purchasing tickets as ARC agents.

17. Suddenly, on or about June 7, 2007, plaintiffs were blocked and inhibited by the ARC computer reservation system for defendant's airline tickets, and consequently plaintiffs were unable to purchase plane tickets for defendant's flights over any GDS for subsequent re-sale to its customers.

18. On or about June 6, 2007, Skylink Travel, Inc. ("Skylink"), a travel wholesaler, communicated with defendant to have reimbursement for approximately seven tickets it had cancelled on defendant's flights.

19. The tickets had been ordered by plaintiff travel agency, Skyline Travel, Inc. (NJ),

from Skylink, who falsely and inaccurately claimed to be unpaid by plaintiff; however, most of the tickets had been paid for at the time of cancellation and the others did not have payment due yet.

20. On or abut June 6, 2007, Skylink, by Sanjeev Sarna, wrote to Akbar Hussain of defendant, Emirates, to the effect that plaintiff travel agency, Skyline Travel, Inc. (NJ), had not paid for the tickets of the listed customers and was making excuses, specifically, by stating "The company has failed to pay us for the tickets and are now coming up with excuses".

21. The tickets that Sarna was referring to in his June 6, 2007 letter to Hussain, were for the following listed passengers: Anisha Jasani, Kushbu Jasani, Rahul Patel, Approva Abbi, Rakesh Abbi, Minakshi Abbi, and Ankit Abbi.

22. The statement by Sarna that tickets had not been paid-for, is and was false, because plaintiff did in fact pay for the tickets for passengers Apoorva Abbi, Rakesh Abbi, Minakshi Abbi and Ankit Abbi on May 25, 2007 and because the payment for passengers Kushbu Jasani, Anisha Jasani and Rahul Patel was not due.

23. Furthermore, plaintiff, Aby George, was never contacted by Skylink to be "coming up with excuses", as he was out of the country and had not spoken to anyone from Skylink Travel, Inc.

24. Plaintiff agency, Skyline Travel, Inc. (NJ), was not "coming up with excuses", as accused by Sarna, but, on the contrary, sent a communication as to payment to Skylink on or about June 1, 2007.

25. Therefore, the statement made in the letter to defendant, Emirates, that plaintiffs were "coming up with excuses" was also false.

26. The June 6, 2007 letter from Sanjeev Sarna, to Akbar Hussain of defendant,

4

Emirates, did not specify, describe or explain, in any way, exactly what excuses plaintiffs were "coming up with".

27.     Skylink never wrote any communication to plaintiffs specifying, describing or explaining the excuses that plaintiffs were allegedly "coming up with".

28.     Bhupinder Nanda, Emirates' financing and administration manager of the USA, was under the impression that plaintiff, Skyline Travel, Inc. (NJ), had not made payments to Skylink, around June 2007, from communications from either Akbar Hussain or Maria Fernandez in the sales department of Emirates.

29.     Sanjeev Sarna also called Akbar Hussain on the telephone and said to Emirates' employee, Hussain, that plaintiffs really did not pay.

30.     Skylink's telephone call to Emirates, described in the preceding paragraph, is and was false for the same reason that the June 6, 2007 letter was false.

31.     Plaintiffs were harmed by Skylink's June 6, 2007 letter to Emirates in that immediately thereafter, rumors circulated about plaintiffs being bankrupt and going out of business.

32.     Plaintiff, Aby George, learned of the rumors circulating about him and took measures to investigate the rumors and quell them.

33.     As a direct result of the letter from Skylink to Emirates, Emirates blocked plaintiffs from selling tickets for Emirates flights on the Airline Reporting Corporation (ARC) through global distribution systems, computerized ticket reservation systems.

34.     Emirates has stated that plaintiffs were blocked on ARC because plaintiffs' letter of credit was withdrawn.

35.     However, plaintiff, Skyline Travel, Inc. (TX) withdrew its letter of credit much

5

later, in or about March 2008.

36. In fact, plaintiffs were blocked from Emirates sales on June 7, 2007, just one day after the letter from Skylink to Emirates.

37. As a direct result of being blocked, plaintiffs lost sales and commissions on Emirates flights because plaintiffs could not issue tickets.

38. Plaintiffs have not sold any tickets on any Emirates flights since June 6, 2007. Therefore, as a direct result of the being blocked from Emirates sales, plaintiffs have sustained damages, including financial losses of hundreds of thousands of dollars in lost commissions.

39. Plaintiffs were blocked from sales from approximately June 6, 2007 to March 2008, a period of time when they had a letter of credit on file, and are still blocked to this day.

## COUNT I: NEGLIGENCE

40. Plaintiffs incorporate herein by reference paragraphs one through thirty-nine of this complaint as if set forth at length.

41. On or about June 7, 2007, defendant was operating its transportation business in New York City.

42. On or about June 7, 2007, defendant operated its business so carelessly, recklessly and negligently as to cause the blockage and inhibition of plaintiffs on ARC.

43. The conduct of defendant in doing business as set forth above was so reckless, careless and negligent as to cause plaintiffs damages set forth hereinafter.

44. The recklessness, carelessness and negligence of defendant consisted of, *inter alia*:

>   a. failing to determine the truth and accuracy of the statements made to it by Skylink;

b. allowing inaccurate information about plaintiffs to be received by it;

c. failing to check with plaintiffs as to the allegations made by Skylink;

d. failing to review passenger lists to see if tickets had been paid;

e. checking with plaintiffs' competitors as to the creditworthiness of plaintiffs;

f. failing to obtain waivers from the passengers with cancelled tickets;

g. granting waivers to Skylink without a valid, passenger reason for ticket cancellation being provided by Skylink to Emirates;

h. granting a waiver to Skylink at Skylink's request, for the benefit of Skylink, not the benefit of the passengers with cancelled tickets;

i. acting upon false and inaccurate information about plaintiffs;

j. violating the standards set forth by the travel industry and/or federal, state, and local governments and authorities;

k. mismanagement;

l. failing to act prudently at all times;

m. confusion, ignorance and misunderstanding as to whether it was Skylink or plaintiff, Skyline Travel, Inc. (NJ), reporting that plaintiff, Skyline Travel, Inc. (NJ), was having financial problems

n. negligence *per se* based upon defendant's violations of 49 USC § 41712 and 14 CFR § 399.80;

o. *res ipsa loquitor* is affirmatively pleaded

p. as will be discovered in discovery.

45. As a direct result of defendant's recklessness, carelessness and negligence, defendant has caused, and will or may cause in the future, damages to plaintiffs including, but not limited to:

    a. a loss of past revenues, income and profit;

    b. a loss of future revenues, income and profit;

    c. a loss of repeat business;

    d. a loss of goodwill;

    e. a loss of competitive advantage;

    f. a loss of customers;

    g. out-of-pocket losses.

WHEREFORE, plaintiffs, Skyline Travel, Inc. (NJ), Skyline Travel, Inc. (TX) and Aby George demand that judgment be entered in their favor and against defendant, Emirates, and that special and general damages in the amount of Two Million Dollars ($2,000,000.00), attorney fees, costs and interest be awarded.

## COUNT II: ANTI-TRUST

46. Plaintiffs incorporate herein by reference paragraphs one through forty-five of this complaint as if set forth at length.

47. Plaintiffs and defendant operated businesses in a relevant market, which was: passenger air transportation and related services for New Jersey residents of Indian or Pakistani ethnicity who desired to fly on Emirates between JFK airport in New York, New York and various cities in India and Pakistan, especially in one-stop flights.

48. Defendant had and has monopoly power and control in the relevant market.

49. Plaintiffs were actively engaged in the travel business and were viable and

significant competitors of defendant from approximately 2003 to approximately June 2007, selling the same products to the same customers in the relevant market, as set forth above.

50. Defendant, Emirates, wrongfully and anti-competitively interacted with a New York travel agency, Skylink, that was a competitor of plaintiffs', by conspiring with Skylink, banding together with Skylink, combining with Skylink, making arrangements with Skylink, having a reciprocal relationship with Skylink, and/or contracting with Skylink, as set forth below.

51. Defendant, Emirates, had at least one agreement with plaintiffs' competitor, Skylink, a special fares or consolidator contract.

52. Defendant, Emirates, and plaintiffs' competitor, Skylink, also had a relationship allowing Skylink to purchase tickets and/or have tickets processed, through ARC.

53. Defendant, Emirates, and Skylink had other agreements, involving the destruction of plaintiff as a competitor, including the June 7, 2007 letter from to Emirates in which Skylink admitted to canceling tickets of plaintiff's customers, in exchange for a "favorable reply".

54. Skylink was or may have been given various forms of compensation by Emirates including rebates, discounts, bonuses, free tickets, authorizations to sell certain tickets such as business class, authorizations to sell tickets at 50% off, and other privileges for destroying plaintiffs.

55. Defendant, Emirates, was or may have been given various forms of compensation by Skylink for the benefits it received for destroying plaintiffs, including kickbacks.

56. An employee of Skylink has lied under oath in the related case of Skyline Travel, Inc**.** and Aby George v. Skylink Travel Inc., and therefore, any agreement between defendant Emirates and Skylink is likely to be deceptively concealed.

57. Furthermore, said agreements to bestow money or benefits for destroying a competitor are not likely to be written contracts.

58. The above scheme is a kickback fact pattern and not a parallel course of conduct fact pattern. Accordingly, the requirement that an agreement be specifically pleaded is not applicable to this case.

59. Inhibiting plaintiffs on ARC, after not renewing the special fares contract, would have allowed and did in fact allow Skylink to make profits on sales of tickets to plaintiffs, that plaintiffs would have otherwise purchased at a lower price from the defendant Emirates, directly, if plaintiffs had either their special fares contract or ARC access.

60. Destroying plaintiffs as competitors would have allowed and did in fact allow Skylink to eliminate confusion in the marketplace, given the similarity of the names of plaintiffs, Skyline Travel, Inc. and Skylink Travel Inc.

61. Destroying plaintiffs as competitors would have allowed and did in fact allow Skylink to expand into the New Jersey market, a market that it desired to enter.

62. Destroying plaintiffs as competitors would have allowed and, upon belief, did in fact allow defendant Emirates to still sell tickets as before, but also have their employees, agents and servants to be enriched by kickbacks.

63. Defendant, Emirates, and Skylink wrongfully pressured and influenced a third-party, the Airline Reservation Corporation, (ARC).

64. The nature of the interaction, conspiracy and joint efforts between defendant and Skylink was a pattern of conduct aimed at the disabling of plaintiffs in the global distribution system for delivering passenger air transportation, in which ARC is the central entity for clearing sales, so that plaintiffs, Skyline Travel, Inc., would not be able to buy defendant's tickets for

10

resale to Skyline Travel Inc.s' customers. The wrongful interaction, conspiracy and joint efforts consisted of overt acts such as letters, emails, telephone calls and other communications.

65. The interaction, conspiracy and joint efforts were based upon and accomplished when Skylink wrongfully communicated with defendant, by writing a letter containing deceptions, misrepresentations, and falsehoods, to the effect that plaintiffs did not pay for certain fares of its customers for tickets that Skylink had sold to plaintiff, Skyline Travel, Inc. (NJ), when in fact plaintiff had paid for the fares.

66. Defendant Emirates failed to investigate the contents of the Skylink letter or in the alternative failed to competently investigate the matter to ascertain the truth of the contents.

67. Defendant failed to confirm the truth of the allegations contained in the Skylink letter.

68. Defendant knew or should have known that plaintiffs had paid for the tickets that Skylink stated were unpaid.

69. Skylink's letter to Emirates caused defendant Emirates to communicate with ARC, requesting that ARC block plaintiff from buying Emirates' tickets through computer reservation systems.

70. In fact, plaintiffs were thereafter blocked from the system and to this day have been unable to buy defendant's, Emirates', tickets through ARC.

71. The conduct of defendant, including but not limited to the wrongful pressure exerted by defendant Emirates on ARC, was intended to, and did in fact accomplish the intent to:

    a. have ARC restrict and block sales of defendant's tickets to plaintiffs;

    b. have ARC refuse to sell defendant's tickets to plaintiffs;

    c. destroy competition;

    d.  eliminate a competitor from competing;

    e.  destroy plaintiffs' entire product, product line and business;

    f.  injure plaintiffs and destroy their business;

    g.  ruin a competitor's business;

    h.  exclude competitors;

    i.  monopolize;

    j.  strengthen defendant's position.

72.    The conduct of defendant, including but not limited to the wrongful pressure exerted by defendant Emirates on ARC, directly has caused, and, in the future, may cause:

    a.  a tendency toward lessening and impairing competition in the relevant market;

    b.  an anti-competitive impact;

    c.  a monopoly;

    d.  a restraint of trade and other economic impacts;

    e.  restraint of trade in the market in question by achieving the destruction of plaintiff, Skyline Travel, Inc. (NJ);

    f.  restraint of trade in the market in question by eliminating a competitor;

    g.  undue restraint;

    h.  a reduced number of competitors;

    i.  the elimination of a competitor;

    j.  the customer base to be deprived of having another business from which to buy air transportation;

    k.  the customer base to be deprived of having a business from which to buy plane tickets at better prices than those offered by defendant;

    l.  competitive injuries;

    m.  public detriment;

    n.  damages to plaintiffs' competitive interests;

    o.  destruction of plaintiffs' New Jersey travel agency;

    p.  a loss of past sales, commissions, revenues, income and profit to plaintiffs;

    q.  a loss of future sales, commissions, revenues, income and profit to plaintiffs;

    r.  a loss of repeat business to plaintiffs;

    s.  a loss of goodwill to plaintiffs;

    t.  a loss of competitive advantage to plaintiffs;

    u.  a loss of customers to plaintiffs;

    v.  out-of-pocket losses to plaintiffs.

73.    Even if the short-term goals and interests of defendant Emirates, to have the maximum amount of tickets sold, would have been met by not failing to renew plaintiff's consolidator contract and/or not inhibiting plaintiffs with ARC, the defendant's long term goals of controlling the marketplace, reducing competitors and captivating the clientele were achieved by destroying plaintiffs as competitors.

74.    The non-renewal of plaintiff's consolidator contract and inhibition with ARC have the appearance of being anti-competitive, irrational, wrongful, and/or lacking in a legitimate business purpose for reasons including , but not limited to:

    a.  Plaintiff agencies were a top producing agency for sales of Emirates tickets, and Skylink was not;

    b.  Plaintiff Skyline Travel, Inc. (TX) was a consolidator for airlines in the 1980s, and a consolidator for Emirates in the 1990s;

    c. Plaintiff Skyline Travel, Inc. (TX) was a consolidator in the New York market for Emirates before Skylink was;

    d. Defendant Emirates had an anti-competitive plan of reducing the number of businesses selling Emirates tickets, and in fact reduced the number of agents from approximately 9,000 to 4,000, and in six states did not renew consolidator contracts at all;

    e. There was no need to block plaintiffs with ARC, when plaintiffs were bonded agents with ARC;

    f. There was no need to block plaintiffs with ARC when plaintiff Skyline Travel, Inc. (TX) had given a letter of credit in the amount of $100,000.00 to Emirates.

75. The effects and consequences of the conspiracy, set forth above, and the damages to plaintiffs, are a direct result of and have been caused by defendant's agreements, conspiracy, joint efforts and reciprocal arrangements with Skylink.

76. The effects and consequence set forth above, including the refusal to sell to plaintiffs, were unreasonable, discriminatory, and done in bad faith.

77. The above conduct of defendant, including refusal to sell, was and is a *per se* illegal boycott of plaintiffs and/or concerted refusal to deal with plaintiffs.

78. Furthermore, defendant had control of an essential facility, ARC, which gave plaintiffs the ability to purchase plane tickets from defendant, for resale.

79. Competitors of defendant, including plaintiffs, have an inability, practically or reasonably, to duplicate the essential facility.

80. Defendant denied the use of the essential facility to plaintiffs.

81. It was unreasonable to deny use or access to the essential facility, and in fact, it

was feasible for defendant to provide the facility to plaintiffs.

82. Therefore, defendant has illegally denied plaintiffs access to essential facilities.

83. The above overt acts by defendant and Skylink happened within the United States of America, within the Southern District of New York.

84. As a direct result of the above, defendant's acts were a willful acquisition of monopoly power, an illegal restraint of trade, a violation of the antitrust laws of the United Sates of America, including, but not limited to, the Sherman Act and the Clayton Act, and the state of New York, including the New York General Business Law, Article 22.

WHEREFORE, plaintiffs, Skyline Travel, Inc. (NJ), Skyline Travel, Inc. (TX), and Aby George, demand that judgment be entered in their favor and against defendant, Emirates, and that special, general and punitive damages in the amount of Ten Million Dollars ($10,000,000.00), attorney fees, costs and interest be awarded.

## **COUNT III: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

85. Plaintiffs incorporate herein by reference paragraphs one through eighty-four of this complaint as if set forth at length.

86. The statutes, regulations and/or common law of the State of New York impose an implied duty of good faith and fair dealing in contract.

87. The duty of good faith and fair dealing in contract was fully effective, operational and valid and was imposed upon defendant, at all material times to this complaint, including the years 2003 through 2007.

88. The aforesaid conduct of defendant, including, but not limited to, blocking and/or inhibiting plaintiffs from access to ARC and/or GDS sales, after and in conjunction with not renewing an annual consolidator contract that had been renewed each year in 2004, 2005, and

2006, and especially after plaintiffs were a top producer of Emirates sales, was and is a breach of the duty of good faith and fair dealing owed to plaintiffs.

89. As a direct result of defendant's, breach of the duty of good faith and fair dealing, defendant has caused, and will or may cause in the future, damages to plaintiffs, including, but not limited to:

>  a. a loss of past revenues, income and profit,;
>
>  b. a loss of future revenues, income and profit;
>
>  c. a loss of repeat business;
>
>  d. a loss of goodwill;
>
>  e. a loss of competitive advantage;
>
>  f. a loss of customers;
>
>  g. harm to the reputation of Plaintiff, Skyline Travel, Inc..

WHEREFORE, plaintiffs, Skyline Travel, Inc. (NJ), Skyline Travel, Inc. (TX), and Aby George, demand that judgment be entered in their favor and against defendant, Emirates, and that special, general, and punitive damages in the amount of Two Million Dollars ($2,000,000.00), attorney fees, costs and interest be awarded.

**COUNT IV:  INTENTIONAL, TORTIOUS INTERFERENCE WITH CONTRACT**

90. Plaintiffs incorporate herein by reference paragraphs one through eighty-nine of this complaint as if set forth at length.

91. Plaintiffs, Skyline Travel, Inc. had valid contracts with the Airline Reporting Corporation (ARC) at the time that defendant had a business relationship with plaintiffs.

92. Defendant knew of plaintiffs' contract and registration with ARC.

93. Plaintiffs, Skyline Travel, Inc., derived revenues, income and profits from their contract and registration with ARC.

94. Defendant interfered with plaintiffs' contract and registration with ARC.

95. Defendant's wrongful and interfering conduct included, but is not limited to blocking and/or inhibiting plaintiff from buying or selling defendants' tickets processed by ARC.

96. Said conduct of defendant was intentional, purposeful, wrongful, tortious, and an unjustified intentional procurement of a breach of contract.

97. As a direct result of defendant's conduct, there were breaches, interferences, inabilities to sell tickets and partial and/or total failures of performance of contractual duties, to the contracts of plaintiffs with third parties.

98. As a direct result of defendant's intentional interference with contracts of plaintiffs, defendant has caused, and will or may cause in the future, damages to plaintiffs, including, but not limited to:

      a. a loss of past revenues, income and profit;

      b. a loss of future revenues, income and profit;

      c. a loss of repeat business;

      d. a loss of goodwill;

      e. a loss of competitive advantage;

      f. a loss of customers;

      g. harm to the reputation of plaintiff, Skyline Travel, Inc.

WHEREFORE, plaintiffs, Skyline Travel, Inc. (NJ), Skyline Travel, Inc. (TX), and Aby George, demand that judgment be entered in their favor and against defendant,

Emirates, and that special damages, general damages, and punitive damages in the amount of

Two Million Dollars ($2,000,000.00) plus attorney fees, costs and interest be awarded.

Dated:  New York, New York
         March 31, 2009

                                        /s/
                          ROBERT G. LEINO, ESQ. RL 4082
                          Attorney for Plaintiffs
                          Skyline Travel, Inc. (NJ),
                          Skyline Travel, Inc. (TX), and
                          Aby George
                          15 Park Row, 17F
                          New York, New York 10038
                          (646) 484-5748
                          rgleino@leinolaw.com